UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE MATHEWS et al.,

    Plaintiffs,

v.

ALC PARTNER INC., d/b/a AMERICAN LASER CENTERS, et al.,

    Defendants.
                               /

Case No. 4:08-cv-10636

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS** (document no. 75)

**INTRODUCTION**

This is a putative class action brought under the federal Employee Retirement Income Security Act ("ERISA") and Fair Labor Standards Act ("FLSA"), as well as under various wage-and-hour statutes of nine different states. The plaintiffs are current or former employees of the defendants. Defendants, in turn, are two business entities and one individual who are or were involved in the ownership and operation of the American Laser Centers chain of clinics. Collectively, defendants will be referred to as "ALC." In short, plaintiffs allege that ALC required them to work hours for which it refused to pay them, thus violating the host of laws the plaintiffs here invoke. Plaintiffs also allege that ALC failed to credit these unpaid hours to their employee benefit plans, thus violating its fiduciary duties under ERISA.

The plaintiffs filed their original complaint in February of 2008. This complaint included plaintiffs from a number of different states, and asserted putative class claims under the laws of each of those states in addition to the FLSA and ERISA claims. Over the

next year or so, plaintiffs discovered additional plaintiffs who were willing to "opt in" to an FLSA collective action. Some of these plaintiffs were from states not already represented by other plaintiffs. In February of 2009, the plaintiffs moved for leave to amend their complaint to add these persons as named plaintiffs, and to state putative class claims under the laws of five new states. Document no. 35. ALC opposed this motion on a number of grounds. Relevant here is its argument that the amendment would have been futile because the Court would lack subject-matter jurisdiction over the putative state-law class claims. In May of 2009, noting that this jurisdictional objection was equally applicable to the putative state-law classes that appeared in the original complaint, the Court granted leave to amend but directed further briefing on the question of its jurisdiction. Document no. 70. The defendants were invited to incorporate their portion of this briefing into a motion to dismiss the amended complaint, which they did. Document no. 75. That motion is now before the Court. As the Court contemplated in inviting this motion, in addition to the jurisdictional questions, ALC has asserted a number of other grounds for dismissal of various portions of the complaint.

## JURISDICTIONAL QUESTIONS

Plaintiffs assert two separate grounds for the Court's jurisdiction over their state-law claims: supplemental jurisdiction under 28 U.S.C. § 1367, and diversity jurisdiction under the Class Action Fairness Act of 2005, codified in relevant part at 28 U.S.C. § 1332(d).

I. <u>Supplemental jurisdiction</u>

The Court first briefly considers ALC's argument that it lacks supplemental jurisdiction over the plaintiffs' state-law claims. 28 U.S.C. § 1367(a) provides that, subject to a few limitations not relevant here,

> in any civil action of which the district courts have original jurisdiction, the
> district courts shall have supplemental jurisdiction over all other claims that

> are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

In order for two or more claims to be part of the same constitutional "case or controversy," they must "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

The Court unquestionably has original jurisdiction over the plaintiffs' FLSA and ERISA claims, both of which arise under federal law. Plaintiffs seek to use these claims to anchor this Court's supplemental jurisdiction over their state-law claims. In contradiction, ALC argues that plaintiffs' state-law claims for improper wage deductions, failure to pay compensation owed following separation, failure to pay accrued vacation time, failure to provide meal periods, and failure to provide accurate wage statements all derive from facts separate from those giving rise to plaintiffs' FLSA and ERISA claims.

For the most part, the Court finds this argument to be unfounded. If deductions from plaintiffs' wages resulted in their total pay being below the minimum wage mandated by the FLSA – which is what the plaintiffs appear to be alleging – this would entitle them to recover under both the FLSA and state wage-and-hour statutes, and thus confer supplemental jurisdiction on this Court over the state-law claim. Similarly, ALC's alleged failures to pay compensation owed at separation would arise from the same conduct as the FLSA violation – not paying plaintiffs for all the hours they worked. On the facts as pleaded, the same can be said of the meal-period claims: plaintiffs allege that they, or some of them, were forced to work during times that were scheduled as unpaid meal breaks. This single course of conduct would violate both the FLSA and the meal-period requirement. Finally, the wage-statements claim is also derivative of the failure-to-pay allegations that form the core of the FLSA claim: plaintiffs allege that ALC failed to properly record the wages they earned but

were not paid. Therefore, the Court does have supplemental jurisdiction over these aspects of the plaintiffs' claims.

The Court is less confident that it has supplemental jurisdiction over plaintiffs' claims for unpaid vacation time. It is not at all clear that such payments are mandated by the FLSA, or that ALC's refusal to pay them was in any way related to its other alleged wrongdoing. Nevertheless, the Court does not find it necessary to reach a final conclusion as the precise boundaries of the Article III case or controversy of which the plaintiffs' federal claims are a part. This is because, to whatever extent that the Court does have supplemental jurisdiction over the plaintiffs' state-law claims, the Court declines to exercise that jurisdiction.

In relevant part, 28 U.S.C. § 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if – . . . (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction." The Court finds that such a situation obtains here. The plaintiffs seek to assert dozens of state-law causes of action, many of which would involve differing legal standards and defenses. The result would be to transform the case from one requiring the application of one or two federal legal standards to a wide factual of factual situations, to one in which a dizzying array of state laws would also have to be applied to an equally dizzying number of discrete sets of evidence. In such a litigation, the time and attention of the court, the attorneys, and the jury would inevitably be predominantly spent on the myriad state law claims. In the Court's view, the logistical problems involved in such an approach, as well as the real threat of prejudice to either side that will be created if the parties, Court and jury are asked to keep track of such a large number of legal standards and compartmentalized sets of evidence, make it undesirable to jointly adjudicate all the claims

in this case under the mantle of supplemental jurisdiction. Simply put, in this case the state claims are better tried in state court.

II.   CAFA Jurisdiction

The Court's preference not to exercise supplemental jurisdiction in this case does not, however, dispose of the jurisdictional question, because the plaintiffs assert an alternative basis for jurisdiction that the Court has no discretion not to exercise. Specifically, the plaintiffs assert that this Court has jurisdiction under the Class Action Fairness Act of 2005 ("CAFA"), as codified at 28 U.S.C. § 1332(d).[1] That subsection provides, at paragraph (2), that

> [t]he district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which– (A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

In a separate provision, however, the Act specifies that this grant of jurisdiction does not apply "to any class action in which . . . the number of members of all proposed plaintiff classes in the aggregate is less than 100." *Id.* § 1332(d)(5). In their complaint, plaintiffs assert that this court has CAFA jurisdiction over their state-law claims. By the instant motion, ALC challenges this assertion. There is no dispute that plaintiffs satisfy CAFA's "minimal diversity" requirement. Instead, ALC questions whether they have met the Act's 100-plaintiff and $5 million amount-in-controversy requirements.[2]

---

[1] CAFA does permit a district court to decline to exercise the jurisdiction it confers in certain circumstances. *See* 28 U.S.C. § 1332(d)(3) and (4). But neither side contends those circumstances are present in this case.

[2] Plaintiffs note that in their answers to the original complaint filed in this case, the defendants each admitted that plaintiffs met the numerosity requirement. *See* document no. 24, ¶ 4; document no. 25, ¶ 4; document no. 27, ¶ 4. The Court need not consider whether this precludes any jurisdictional objection, however, since its conclusions with regard to the separate $5 million amount-in-controversy requirement are independently dispositive of the question.

5

ALC's motion is one to dismiss the relevant claims for lack of subject matter jurisdiction. Such a motion is brought under Federal Rule of Civil Procedure 12(b)(1).

> A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists.

*DLX, Inc. v. Kentucky*, 381 F. 3d 511, 516 (6th Cir. 2004) (citations omitted). In the instant motion, ALC challenges the sufficiency of both the jurisdictional allegations and of the actual underlying facts. In other words, ALC brings both facial and factual challenges to this Court's CAFA jurisdiction. As the Court concludes that plaintiffs have not met their burden of establishing factual jurisdiction, it need not consider the question of facial jurisdiction.

### A. Analysis

   1.

In their briefs, plaintiffs make no attempt at all meet their burden of establishing a factual basis for jurisdiction. They instead argue that ALC is barred from bringing a factual challenge at this stage. Plaintiffs give two reasons for this. First, they assert that in requiring additional briefing on the question of jurisdiction, the Court permitted only a facial attack. This contention is not correct. While the Court did require additional briefing on the question of facial jurisdiction in the course of granting plaintiffs' motion to amend their complaint, *see* Opinion and Order of May 28, 2009, pp. 5-6, it did nothing to impair the defendants' ability to move for dismissal of the amended complaint on other grounds. In fact, the Court expressly preserved defendants' right to raise "any other matters [they] might choose . . . in support of a motion to dismiss." *Id.* at 6.

6

Second, plaintiffs argue that a factual attack on jurisdiction may be brought by a defendant only after the defendant has filed an answer to the complaint. In support of this proposition, plaintiffs cite a footnote from a thirty-year old Third Circuit case. *See Mortensen v. First Fed. Savings & Loan Ass'n*, 549 F. 2d 884, 891-92 n.17. Although plaintiffs note that this rule of *Mortensen* has been followed by a district court in recent years, *see Berthesi v. Penn. Board of Probation*, 246 F. Supp. 2d 434, 437 (E.D. Pa. 2003), it has in fact long since been rejected by another panel of the Third Circuit itself. In *Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F. 2d 198 (3d Cir. 1990), the Third Circuit noted this "dictum in *Mortensen*," but stated that "we are convinced that the argument is wrong." *Id.* at 200. As a result, the *Berardi* court held that "the district court properly looked beyond the allegations in Berardi's complaint in ruling upon the Lodge's motion to dismiss." *Id.*

In any event, a rule permitting factual attacks on the jurisdictional basis of a complaint to occur only after an answer is filed is utterly incompatible with the Sixth Circuit's clear and repeated holding that such a factual attack is properly brought by motion under Federal Rule of Civil Procedure 12(b)(1), since Rule 12(b) itself provides that such motions can be brought only *before* the moving party files a pleading.

The Court notes the plaintiffs' repeated arguments, in their brief, that defendants have yet to file an answer in over two years of this litigation. As the plaintiffs acknowledged at the hearing on this motion, moment's check of the docket in this case reveals the incorrectness of this assertion: defendants filed answers to the original complaint in this action in December of 2008, only seven months ago. *See* document nos. 24, 25, 27. Of course these were not responses to the instant amended complaint, but since the rule proposed by plaintiffs is apparently not the law in either the Third Circuit or anywhere else,

7

the Court need not decide whether they would be sufficient under that rule to permit a factual attack on jurisdiction.

2.

At the hearing on this matter, plaintiffs did argue that the evidence establishes that there are 84 ALC clinics in the states covered by the proposed classes. *See* document no. 75-4, p. 5. From this, plaintiffs calculate that it would require only an average of 4 plaintiffs per clinic, with an average claim of just under $15,000, to establish the requisite $5 million in controversy. The Court finds no fault with the plaintiffs' arithmetic, but notes that they have produced not a shred of support for these claims on which the Court could find that there are in fact 4 plaintiffs per clinic or at least $15,000 per plaintiff at stake. On the current record, then, plaintiffs have made no showing whatsoever that the underlying facts of the case support this Court's CAFA jurisdiction. For this reason, the Court is unable to exercise jurisdiction over their state-law claims, and will dismiss them. As a result, the Court need not and does not reach ALC's other arguments in favor of dismissal of portions of the state-law claims.

## ERISA CLAIMS

ALC aims another of its arguments only at plaintiffs' ERISA claims. Those claims are predicated on the same alleged facts as the FLSA claims: that ALC did not pay plaintiffs for all the hours they worked. Plaintiffs additionally allege that ALC did not credit these hours to their accounts in their ERISA employee benefit plans, with the result that the plaintiffs' benefits from those plans are or will be smaller than they should, under the plan documents. In its motion to dismiss the original complaint, ALC argued that these allegations did not state a claim, because an employer's decision whether to pay an employee was a business decision, and not an ERISA fiduciary decision. As a result,

maintained ALC, a failure to pay an employee, of the kind alleged by the plaintiffs here, would not amount to a breach of any duty imposed by ERISA. The Court agreed that decisions whether to pay employees were business decisions and not the exercise of ERISA duties. Opinion and Order of December 9, 2008, document no. 21, p. 10. But it also held that if the ERISA plan determined an employee's benefits based on the hours she worked or the wages she earned, and not merely on the wages actually paid to her, then the decision whether to credit hours worked – even unpaid hours – would be a fiduciary duty under ERISA. *Id.* at 12. After articulating this rule, the Court noted that it was impossible to determine whether it warranted dismissal in this case, because the relevant plan documents had not been attached to the Complaint. *Id.* at 13. The Court invited ALC to file those documents and to move once again for dismissal or summary judgment. *Id.*

ALC has now filed what it represents to be the plan documents, *see* document nos. 75-5 through 75-11, and asserts that they peg plan benefits only to wages actually paid, not to hours worked or wages earned. If this is the case, then under the terms of the plans the plaintiffs would not have been entitled to any additional benefits for unpaid work hours, and under the Court's previous ruling defendants therefore would not have breached any fiduciary duties by failing to credit the plaintiffs' plans for those hours. Plaintiffs, however, object that these documents may not be the ones that actually govern the plans, or that there may be additional relevant documents. While this factual controversy exists as to the identity of the plan documents, the Court will not decide on the validity of the plaintiffs' ERISA claims on a motion to dismiss. Instead, the Court will create an accelerated cut-off date for discovery related solely to the identity and contents of the documents governing the plaintiffs' ERISA plans. The Court will additionally establish a deadline for the parties to stipulate to the authenticity, identity and contents of these documents and submit them

on the record. Once they do so, the Court will determine the validity of the plaintiffs' ERISA claims as part of the instant motion to dismiss. In what the Court sees as an unlikely possibility, if the parties are unable to stipulate as to the documents after limited discovery, the Court will treat the ERISA portion of the instant motion as one for summary judgment, and adjudicate it on that basis.[3]

## CONCLUSION AND ORDER

Plaintiffs have failed to carry their burden of proving that the Court has jurisdiction over their state-law claims under the Class Action Fairness Act. To the extent that the Court has supplemental jurisdiction over those claims, it declines to exercise such jurisdiction, as the claims substantially predominate over the plaintiffs' federal claims. As plaintiffs currently contest the identity and composition of the ERISA plan documents at issue in this case, the Court will not at this time rule on defendants' motion to dismiss plaintiffs' ERISA claims.

**WHEREFORE**, it is hereby **ORDERED** that:

Defendants' motion to dismiss is **GRANTED IN PART**. The Court **DECLINES** to exercise its supplemental jurisdiction in this case, and Counts Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, and Thirteen of the Amended Complaint are **DISMISSED WITHOUT PREJUDICE**;

---

[3] At various times throughout this litigation, both sides have taken legal positions that, even with a healthy dose of generosity, can be fairly described as very weak. The Court has nevertheless avoided direct criticism of such positions. Both parties are hereby advised, however, that attempts to manipulate discovery or questions of fact on the issue of the plan documents to prolong or delay resolution of the ERISA issue will not be tolerated.

10

Discovery on the issue of the identity, authenticity and contents of the documents that govern or governed plaintiffs' ERISA plans shall be completed by **September 18th, 2009**. If the parties fail to stipulate to the identity of these documents by **October 2d, 2009**, the remainder of defendants' motion will be treated as one for summary judgment and adjudicated accordingly.

                                                s/Stephen J. Murphy, III
                                                STEPHEN J. MURPHY, III
                                                United States District Judge

Dated: July 31, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 31, 2009, by electronic and/or ordinary mail.

                                                Alissa Greer
                                                Case Manager