UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE MATHEWS, et al.,

    Plaintiffs,

v.

ALC PARTNER, INC., d/b/a AMERICAN
LASER CENTERS, et al.

    Defendants.
                                 /

Case No. 2:08-CV-10636

HONORABLE STEPHEN J. MURPHY, III

**OPINION AND ORDER GRANTING PLAINTIFFS' MOTION
FOR CONDITIONAL CLASS CERTIFICATION AND COURT-
ORDERED NOTICE** (document no. 36), **OVERRULING DEFENDANTS'
OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER DENYING
THEIR MOTION TO STRIKE, AND ORDERING FURTHER BRIEFING**

The plaintiffs in this litigation are a nationwide group of current and former employees in American Laser Centers clinics. The defendants are two entities and one natural person who at some time have each been associated with the ownership and operation of American Laser Centers -- ALC Partner, Inc., ALC Acquisition Company, LLC, and Richard Morgan (collectively, "ALC"). The plaintiffs' key grievance in this suit is that, during their time as clinic employees, they were regularly required to work hours, including overtime hours, that they were not paid for. The plaintiffs claim that this violated the federal Fair Labor Standards Act of 1938, as amended *codified at* 29 U.S.C. §§ 201 *et seq.*, and accordingly seek recovery of their unpaid wages and overtime. Complicating this claim is the fact that some of the plaintiffs are or were managers and assistant managers for ALC, who for some or all of the time here in question were categorized by ALC as "executive, administrative or professional" employees, exempt from the FLSA's minimum-hourly-wage requirements under 29 U.S.C. § 213(a)(1). These plaintiffs additionally assert that the

classification was incorrect, and that they in fact were entitled to minimum wages and overtime under the FLSA.

Before the Court is the plaintiffs' motion to conditionally certify this case as an opt-in FLSA collective action, as well as defendants' motion to strike the plaintiffs' affidavits in support of certification.

## LEGAL STANDARD

FLSA actions cannot be brought as class actions under Federal Rule of Civil Procedure 23. Instead, the FLSA contained a special provision providing that a suit under it "may be maintained against any employer . . . by any one or more employees for an in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. sec. 216(b). The very next sentence of the statute, however, states that "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is file din the court in which such action is brought." *Id.*

The result is that the FLSA's provisions for multi-plaintiff lawsuits are broader in some respects than Rule 23's, and narrower in others. They are broader in the sense that, while the burden of establishing that the putative class members are "similarly situated" remains on the lead plaintiffs, *O'Brien v. Ed Donnelly Ents., Inc.*, — F. 3d. ----, 2009 WL 2382437, at *13 (6th Cir. Aug. 5, 2009,. the members of an aspiring FLSA plaintiff class need not establish as great a similarity between their claims as the members of a Rule 23 class. The Court of Appeals for the Sixth Circuit recently noted that the FLSA "does not define 'similarly situated,' and neither has this court." *Id.* Nevertheless, the appeals court held that the presence of individualized questions of fact with respect to potential opt-in FLSA plaintiffs does not prevent their being "similarly situated," even if it would preclude class certification under "the more stringent criteria" of Rule 23. *Id.* The *O'Brien* court also

2

stated that FLSA plaintiffs also need not demonstrate "a 'unified policy' of violations" in order to establish that they are similarly situated. *Id.*

On the other hand, an FLSA plaintiff who wishes to represent a class cannot expect to achieve that status simply by convincing the Court that it is a worthwhile idea, as would be possible under Rule 23. Instead, the plaintiff is required to locate and obtain the consent of every person she wishes to bring into the action. This task is made easier, however, by the Supreme Court's holding that "district courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs." *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (interpreting this section of the FLSA, as incorporated by reference into the Age Discrimination in Employment Act). Before exercising its discretion to direct such notice, however, "[t]he court must first consider whether plaintiffs have shown that the employees to be notified are, in fact, 'similarly situated.'" *Comer v. Wal-Mart Stores, Inc.*, 454 F. 3d 544, 546 (6th Cir. 2006).

## FACTS

The amended complaint in this action names sixteen plaintiffs, who hail from nine different states. Each of the plaintiffs holds or held one of three types of job title at an ALC clinic. The first job type consists solely of Managers. The second type includes the job titles Assistant Manager and Aestheticians. The third job type includes titles of Clinic Technician, Laser Technician, Laser Operator, and Paramedical Aesthetician. For the sake of convenience, the Court will refer to these groups as "Managers," "Assistant Managers," and "Technicians," respectively. For much of the relevant time period, both Managers and Assistant Managers were classified as exempt and accordingly not paid overtime.

The record on this motion for conditional class certification and notice consists mainly of (1) the plaintiffs' declarations describing their job duties, and (2) job descriptions of

Managers, Assistant Managers, and Technicians, taken from ALC's employee handbook. Within each of the three groupings of employees, the declarations are largely identical. In support of their claim to have been misclassified as exempt from FLSA requirements, the Manager plaintiffs state that "the most critical duties of my position were non-managerial functions of [sic] selling and marketing ALC treaments and products. My job duties remained consistent throughout my employment as a clinic manager." *See, e.g.* Decl. of Michelle McPherson, document no. 36-3, p. 3, at para. 3. The declarations include various other statements to the effect that each manager's daily job duties were dominated by sales-related activities. Each of the Managers' declarations also includes a statement that the declarant "routinely worked over 40 hours per week but was not paid for these overtime hours." *See id.* para. 5. Each of the Manager-declarants states that she is "informed and believe[s]" that other ALC managers also worked mostly in sales, and were also not paid overtime. *See id.* paras. 3, 6. Finally, the Manager-declarants all agree that the excerpt from the employee handbook dealing with managers accurate describes her job. *See id.* para. 10.

Similarly, the Assistant Managers agree that "the most critical duties of my position were non-managerial functions like selling and marketing ALC treaments and products, as well as performing those treatments. My job duties remained consistent throughout my employment as an assistant clinic manager." *See, e.g.,* decl. of Tanya E. Delahoz, document no. 36-3, p. 19, at para. 3. The Assistant Managers stress that they "did not have the authority or discretion to make important operational decisions," such as hiring and firings, promotions or demotions, employee review and discipline, or setting other employees' pay. *See id.* para 4. The Assistant Managers' declarations include similar statements as to routinely working unpaid overtime, *see id.* para. 5, and, on information and

4

belief, as to other Assistant Managers' jobs and hours being similar, *see id.* paras. 3, 6. The Assistant Managers' declarations also state, on information and belief, that some of their number were reclassified as non-exempt employees in 2007, and have been paid hourly rates since that time. *See id.* para. 9. Like the Managers, the Assistant Managers agree that the employee handbook gives an accurate description of their jobs. *Id.* para. 10.

Finally, the Technicians likewise agreed that they routinely worked unpaid overtime. *See, e.g.*, decl. of Jila Clark, document no. 36-3, p. 27 para. 4. The Technicians also agreed as to some of the business practices at ALC that resulted in this unpaid overtime. Such practices included requiring Technicians to arrive 30 to 60 minutes before their first scheduled patient treatment of the day, staying after the scheduled ends of their shifts to finish behind-schedule customer treatments and clean up the treatment room and complete paperwork, and working through their lunch breaks. *See id.* paras. 5, 6, 9, 10. The Technicians also unanimous state that they complained about the unpaid overtime, but were "told that corporate policy did not allow overtime." *Id.* para. 11. Each of the Technicians states on information and belief that others did the same, s*ee id.* para. 12, and agrees that the employee handbook accurately describes her duties.

The employee handbook's description of a Manager's duties states that the manager is "[r]esponsible for the day-to-day management functions of a Center that includes supervising staff, meeting and consulting with customers, sales and marketing efforts, and keeping financial records." Document no. 36-4. The handbook states that Managers handle centers with staffs of between two and four, and that they conduct a variety of activities, ranging from scheduling and reconfirming patient appointments to setting and report monthly clinic sales goals to answering telephone calls and responding to voice mail

5

messages. The handbook also states that a Manager's "[a]nnual performance evaluations will be based on meeting sales goals and working effectively with corporate staff."

The corresponding document for Assistant Managers states that they are "[r]esponsible for the day-to-day supervision of the Clinic," including "providing coaching to clinic technicians,' "expanding strong customer relationships," "maintain[ing] accurate financial records," and "ensur[ing] that time sheets are approved, accurate and sent to HR by the payroll deadline.' Document no. 36-5. The Technicians handbook page indicates that such employees are "[r]esonsible for providing treatment services and maintaining treatment equipment." Document no. 36-6. Technicians' more specific list of duties includes a litany of equipment maintenance and paperwork tasks. *Id.*

## ANALYSIS

In their motion, the plaintiffs seek two different orders from the Court: an order certifying their class, and an order directing notice to other potential opt-in class members. Thus, the question presented is first whether the named plaintiffs are similarly situated to each other, so as to support class certification, and second whether they have shown that they are similarly situated to the absent potential opt-in plaintiffs, so as to support notice to those potential plaintiffs.

I.  Motion to Strike the Plaintiffs' Affidavits

ALC has attempted to moot the question by moving to strike the plaintiffs' affidavits, and thus to deny their motion of its factual support. The Court referred this motion to Magistrate Judge Donald A Scheer, who issued an order denying it. ALC has filed objections to that order, on which the Court will conduct a *de novo* review.

ALC offers several arguments in support of its motion to strike First, ALC points to the Managers' and Assistant Managers' repeated assertions that their duties were "non-

managerial," arguing that these statements are unsupported and inadmissible legal conclusions. The Court does not agree. Although the FLSA's managerial exception is indeed a legal term of art, there is no reason not to interpret the plaintiffs' affidavits as using the word in a more colloquial sense. Plaintiffs obviously are not competent to opine on the ultimate issue of whether they qualified as FLSA "managers." But they certainly may speak to whether the duties they performed are of a type commonly regarded as managerial. Such testimony may not be dispositive of the FLSA inquiry, but it certainly is relevant to it. The Court will read the Managers' and Assistant Managers' affidavits in that light.

ALC also argues that no foundation has been laid as to certain statements in the Managers' declarations. The Managers state that their job performance "was evaluated almost exclusively based on meeting sales goals" and that their sales "were monitored on a daily basis by my regional manager and by ALC corporate officers." *See, e.g.,* decl. of Michelle McPherson, document no. 36-3, p. 2, para. 3. ALC also notes that significant portion of the declarations are made merely on information and belief. The Court agrees that the declarations do not establish the basis of plaintiffs' knowledge for these statements and that accordingly these portions of the declarations are entitled to little or no weight. Rather than striking them, however, the Court's view is that the appropriate method for handling these infirmities is to disregard them in inquiring whether plaintiffs and the absent potential class members are similarly situated.

Finally, ALC stresses that within each group of plaintiffs, the affidavits are nearly identical. ALC further characterizes the affidavits as "conclusory." The Court agrees that the affidavts are concise, and perhaps even somewhat sparse. But this does not render them insubstantial. In particular, the uniformity that ALC derides is in the Court's view a substantial indicator in favor of the plaintiffs being similarly situated. There is no rule that

requires plaintiffs to compose affidavits in their own words, without the assistance of counsel. In that light, the fact that many plaintiffs can agree on a single formulation as accurately describing their job duties is a strong indicator that certification is appropriate.

Accordingly, while ALC"s objections to Magistrate Judge Scheer's report and recommendation are grounded on substantial arguments, the court will nonetheless overrule them. In the affidavits, however, the Court will be mindful that significant portions are without foundation or are hearsay.

## II.   Motion to Certify and Notify

With respect to plaintiffs' motion for conditional class certification and notice to potential class members, defendants raise three potentially meritorious objections and a number of insubstantial ones. The Court will examine each in turn.

### A.  Exempt Versus Nonexempt Employees

ALC notes that the Managers and Assistant Managers were classified as exempt from overtime, whereas the Technicians were not. This, argues ALC, means that the claims of these two groups of employees are simply too different for them to be similarly situated.

The Court agrees. The Technicians' claims in this suit will be simply that they were not paid for some of the hours they worked. By contrast, employees who were classified as exempt will have to show not only that they worked uncompensated hours, but also that the substance of their work was not, in fact, predominantly managerial. This major difference between the two types of claims leads the Court to conclude that, in this context at least, exempt and non-exempt ALC employees are not "similarly situated" within the meaning of the FLSA. Furthermore, due to the varying job duties of Managers and Assistant Managers, both of which will be relevant to the propriety of their managerial

classifications, the Court concludes that even these two groups of employees cannot be included in a single class.

The Court declines, however, to take the extra step suggested by ALC, and declare that each individual plaintiff's job duties were so unique that she could not have been similarly situated to *anyone* else. Within the groups of Managers, Assistant Managers, and Technicians, the plaintiffs' accounts of their job duties, although admittedly somewhat generalized, are almost identical. Accordingly, the Court is satisfied that differences in the plaintiffs' job descriptions can be addressed by certification of three different classes, broken down generally along these lines.

One modification would be necessary, however, to address another issue pointed out by defendants: the fact that during the class period, some of the Assistant Managers were reclassified from exempt to non-exempt. The Court does not view this as the insuperable obstacle to class certification that ALC makes it out to be. Rather, the Court will simply expand the Technicians class to include all employees who were classified as non-exempt at some time during the class period. In the Court's view, there is enough overlap between the duties of Assistant Managers and Technicians that the two groups can be regarded as similarly situated, in the absence of a disparity in classification between them. It is true that this will mean that the reclassified Assistant Managers will be part of both the "exempt Assistant Managers" and the "non-exempt employees" classes. But this division will mirror the very different kinds of proof that these Assistant Managers will be required to adduce with respect to their exempt and non-exempt periods. Given the fact that the reclassification occurred, the Court finds this certification arrangement is likely to be more efficient than attempting to bunch the reclassified Assistant Managers into some single class that inevitably would not share all of their characteristics.

Finally, the Court does not find it worrying that some of ALC's Technicians work part-time, which as ALC points out renders them ineligible for FLSA overtime. From the current plaintiffs' declarations, it does not appear that any of them are part-time employees. Accordingly, the Court will certify a non-exempt class including only those employees who worked full-time at some point during the relevant period.

### B. Different Employers

Defendants also note that the plaintiffs' employer at the beginning of the proposed class period was defendant ALC Partner, Inc., but that during the class period the business was sold to ALC Acquisition Co., LLC. The Court agrees that it is *possible* that a plaintiff who worked only for ALC Acquisition may not be similarly situated to one who worked only for ALC Partner. At this point, however, there is no evidence that the sale of the business resulted in any substantial changes for any of the plaintiffs' employment. In fact, it appears that none of the plaintiffs even noticed the change in control, and that from their perspective at least the sale was for the most part purely a paper transaction. Thus, the Court will not decline to certify the classes or to notify their potential members, on this basis. The Court stresses, however, that its certification at this point is merely conditional. Should discovery indicate that the transfer of control brought about significant changes in plaintiffs' work situations, the Court will not hesitate to rearrange or even withdraw the class certifications accordingly.

### C. Class Conflict

Perhaps ALC's most serious argument is that the Technicians cannot be similarly situated with the other types of employees, and particularly with the Assistant Managers,

because those employees were charged with certifying the Technicians' timecards, and for ensuring compliance with ALC's asserted policy that all hours at work should be recorded. Thus, for the Technicians to prove that they worked unpaid overtime, they will be required to establish that their superiors, and in particular their Assistant Managers, were complicit in requiring them to do so.

The Court agrees that this is a potentially serious class conflict. Further, splitting the plaintiffs into Manager, Assistant Manager, and Technician classes only partially addresses the problem, because at present all three classes would still be represented by the same counsel. Accordingly, the Court will invite the parties to further address the this potential conflict between the classes, and to suggest possible solutions, up to and including the appointment of separate counsel for the Technicians class.

### D. ALC's Other Objections

The remainder of ALC's objection are less serious. ALC maintains that the job activities of Managers varied with the markets and circumstances in which each individual clinic was located, and that the Managers therefore cannot be similarly situated with respect to the classification as exempt. On a similar note, ALC objects that the duties of Assistant Managers varied with both the market and the predilections and talents of the individual Managers. The Court recognizes, of course, that each workplace is different, and will present different questions in analyzing whether these employees were properly classified as exempt. But, as the Sixth Circuit made clear in *O'Brien*, 2009 WL 2382437 at *13, such individualized questions are to be expected in FLSA opt-in actions. In this case there is very little affirmative evidence that conditions for ALC's business varied

significantly between clinics and cities.[1]  In fact, the record indicates that ALC regarded both the Manager and the Assistant Manager positions as standardized enough to be described in a single page in the employee handbook, and that all the plaintiffs describe their job duties as being similar.  Although the evidence is admittedly thin, it therefore sways in favor of a finding that plaintiffs are similarly situated.

For the same reasons, ALC's objection that there is no evidence of the situations of absent potential class members must also fail.  It is true that there is no firsthand testimony of these duties and conditions of these persons' employment.  But there is no reason to believe that the sixteen current plaintiffs are the only ones nationwide whose experiences in the workplace are very similar to each other and well-described by ALC's employee manual.  Even without direct evidence, the Court is willing to conclude that the absent potential class members are likely to be similarly situated to the current plaintiffs who hold similar positions.

ALC argues that the overtime worked by technicians and other non-exempt employees depends entirely on the possibly idiosyncratic requirements of those employees' managers.  It further maintains that, because some of the non-exempt employees were actually paid overtime, they cannot be similarly situated to those who were deprived of overtime.  The Court finds these arguments to be meritless. The non-exempt employees are similarly situated because they worked in relatively similar positions in ALC clinics and were allegedly not paid overtime.  *How much* overtime any given plaintiff was not paid is necessarily an individual question.  The presence of these extra factors may slightly add

---

[1] ALC has filed affidavits suggesting that conditions from state to state are *somewhat* different, creating some distinctions between the kinds of work that the different levels of employees may and do perform.  In the Court's view, however, there remains a significant overlap between the functions of ALC employees with a given job title, regardless of their geographical location.

to the complexity of the question, but it cannot defeat a finding that these employees are similarly situated.

Finally, and most briefly, ALC maintains that because there is no proof that all the plaintiffs were underpaid as part of a common policy, they cannot be similarly situated. ALC's brief was filed before the Sixth Circuit handed down *O'Brien*, in which the Court plainly stated that "[s]howing a 'unified policy' of violations is not required" for plaintiffs to establish that they are similarly situated. *Id.* Accordingly, this point of ALC's is unmeritorious.

### III. Equitable Tolling

Plaintiffs also request that the Court equitably toll the statute of limitations, from the date the original complaint was filed in this multi-lawsuit dispute between the parties, with respect to the claims of as-yet-absent class members. Plaintiffs state, without elaboration, that such tolling is warranted by defendants' dilatory litigation tactics.

The Sixth Circuit has identified "some factors" that are "pertinent to a decision whether to apply equitable tolling." *Andrews v. Orr*, 851 F. 2d 146, 151 (6th Cir. 1988). "The factors are: (1) lack of actual notice of [the] filing requirement; (2) lack of constructive knowledge of [the] filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) a plaintiff's reasonableness in remaining ignorant of the notice requirement." *Id.*

Despite the named plaintiffs' urgings, the Court does not regard this test as suitable for preemptive, one-size-fits-all application to a group of as-yet-unidentified potential plaintiffs. Accordingly, the Court will not enter an order equitably tolling the statute of limitations at this time. If and when potential plaintiffs whose claims would otherwise be

time-barred choose to opt in to the class, they may apprise the Court of their circumstances and individually move for equitable tolling.

IV.   Form of the Notice

The proper form of the class notice remains to be considered. Plaintiffs have filed with the Court a proposed notice, to which ALC has raised several objections. Three of these objections are simply reiterations of ALC's substantive arguments against class certification: ALC argues that notice should be sent only to plaintiffs who worked for the same employer and in the same geographical location as the named plaintiffs, and additionally maintains that both exempt and non-exempt employees should not receive notice. For the reasons stated above, the Court rejects the first of these seconds, and will address the second by authorizing separate notices to each of the three classes it will conditionally certify. Third, ACL argues that the potential conflict of interest between the classes should prevent notice from being sent to all of them. In the Court's view, this conflict will be manageable and should not prevent notice being sent.

The parties dispute the proper class period. Under 29 U.S.C. sec. 255(a), the statute of limitations for actions seeking to recover unpaid minimum wages is two years, unless the violation was willful, in which case the limitations period is three years. In the Court's judgment, the plaintiffs' claims with respect to the non-exempt class are necessarily predicated on a willful violation, and the proper class limitations period is therefore three years. With respect to the non-exempt plaintiffs, however, there is much less showing of willfulness in ALC's violation. Accordingly, rather than invite persons to file a lawsuit only to quickly dismiss them on statute-of-limitations grounds, the Court will direct notice only to exempt employees who worked for ALC within a two-year limitations period.

14

The parties' dispute as to the tolling of the statute of limitations also rears its head in the context of defining the dates of the proper class period. Although the complaint in this case was not filed until February 13, 2008, plaintiffs seek a class period beginning on July 16, 2004, which was apparently three years before the date of their filing a previous, now-dismissed complaint asserting the same claims. ALC, on the other hand, argues for a class period ending on date the complaint was filed. On what little evidence it has, the Court regards both sides as bearing substantial responsibility for the delays in the litigation up till now, and will not penalize the defendants for it by enlarging their potential liability through equitable tolling. Accordingly, it will adopt February 13, 2008, as the end date for the class period.

ALC also maintains that the notice should include a fuller explanation of the class claims and defenses, and a disclaimer that "The Court has not expressed any opinion as to the merit of any claim or defense raised by the parties to the lawsuit." The Court has no quarrel with these suggestions, and will modify the proposed notice accordingly. By contrast, the Court regards it as unnecessary to add warnings to the notice about possible decertification and attorneys' fees awards for defendant, as ALC requests.

ALC requests that the opt-in period be 45 days, instead of plaintiffs' proposed 60. The Court will adjust the proposed notice to reflect a compromise period of 50 days. Finally, plaintiffs propose sending notice both by first-class mail and by posting notice of this suit in ALC clinics across the country. ALC objects to the latter procedure as unnecessary and unduly intrusive. The Court agrees, and will direct notice by first-class mail only.

**ORDER**

15

**WHEREFORE**, it is hereby **ORDERED** that plaintiff's motion for conditional class certification and notice to the potential class members is **GRANTED**, as follows:

- The Court **CONDITIONALLY CERTIFIES** three classes:

    (1)   The "Non-Exempt Class," consisting of all "clinic technicians," "assistant clinic managers," and similarly situated employees who worked on a full-time basis for defendants ALC Partner, Inc., ALC Acquisition Company LLC, or Richard Morgan, and were classified by the employing defendant as non-exempt under the FLSA, at any time between February 13, 2005 and February 13, 2008;

    (2)   The "Exempt Assistant Managers Class," consisting of all "assistant clinic managers" and similarly situated employees who worked for defendants ALC Partner, Inc., ALC Acquisition Company LLC, or Richard Morgan, and were classified by the employing defendant as exempt under the FLSA, at any time between February 13, 2006 and February 13, 2008;

    (3)   The "Managers Class," consisting of all "clinic managers" and similarly situated employees who worked for defendants ALC Partner, Inc., ALC Acquisition Company LLC, or Richard Morgan, at any time between February 13, 2006 and February 13, 2008.

    This certification is conditional on the resolution to the Court's satisfaction of the potential conflict between the exempt and non-exempt classes, as described above.

- Within 20 days of the entry of this order, both sides shall submit briefing addressing the potential conflict between the exempt and non-exempt classes that arises from the exempt classes' involvement in certifying the non-exempt classes'

timecards, and propose methods of redressing this potential conflict. These briefs shall not exceed 15 pages in length. Within 27 days of the entry of this order, each side may file a response brief of up to five pages

- Once the Court is satisfied that the potential conflict has been adequately resolved, the Court will order defendants to provide to plaintiffs' counsel a computer-readable data file containing the names, and last known mailing addresses of all potential opt-in plaintiffs in the classes described above. This data file shall indicate which of the above classes each potential plaintiff might belong to. Plaintiffs are will then, and only then, be authorized to send by first class mail a Notice or Notices to be provided by the Court to the applicable class members, which will accord with the analysis above.

**SO ORDERED.**

                              s/Stephen J. Murphy, III
                              STEPHEN J. MURPHY, III
                              United States District Judge

Dated: August 24, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on August 24, 2009, by electronic and/or ordinary mail.

                              Alissa Greer
                              Case Manager