UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE MATHEWS, et al.,

    Plaintiffs,

Case No. 08-cv-10636

v.

HONORABLE STEPHEN J. MURPHY, III

ALC PARTNER, INC., et al.,

    Defendants.
    _____/

**ORDER GRANTING DEFENDANTS'
MOTION TO DISMISS ERISA CLAIMS**

On May 28, 2009, the Court granted to Plaintiffs leave to file their first amended complaint. Docket no. 70. Defendants ALC Partner, Inc., et al. ("ALC") swiftly moved to dismiss this complaint on June 17, 2009. The Court resolved the vast majority of that motion in an Opinion and Order dated July 31, 2009, dismissing, without prejudice, Counts Four through Thirteen. Docket no. 83. The Court did not, however, resolve ALC's motion with respect to Plaintiffs' ERISA claims (Counts One and Two), because of a dispute as to the authenticity, identity, and contents of the governing plan documents incorporated into the complaint by reference. Without knowing what the plan documents actually said, the Court could not decide the motion. The parties having stipulated to the authenticity of the plan documents submitted to the Court on October 2, 2009, the Court is ready to rule on the ERISA claims.

The principal claim in this case is that ALC failed to pay Plaintiffs for all the hours they worked, in violation of the federal Fair Labor Standards Act of 1938, as amended. Plaintiffs also bring ERISA claims predicated on ALC's failure to pay the Plaintiffs, alleging that ALC failed to credit the additional hours worked (but not compensated for) to their accounts in

the ERISA benefit plans, with the result that the Plaintiffs' retirement benefits from those plans are or will be smaller than they should be according to plan documents. ALC argues that these allegations do not state a claim under ERISA because ALC's decision not to pay its employees for all hours worked, and therefore credit the retirement account for all hours worked, was a *business* decision, *not* an ERISA fiduciary decision, so the failure to credit the plan for all hours worked could not have breached any fiduciary duty.

The Court agreed that the decision of whether to pay employees was a business decision, and not a ERISA fiduciary decision subjecting the employer to fiduciary status for those decisions. Opinion and Order of December 9, 2008, docket no. 21, p. 10. But the Court also indicated that if the ALC retirement plan determined an employee's ERISA benefits based on the number of hours worked or wages *earned*, and not merely on wages actually *paid*, then the decision whether to credit hours worked -- even unpaid hours -- would be a fiduciary decision under ERISA. *Id.* at 12. After articulating this point, the Court noted that it was impossible to determine whether the ERISA claims warranted dismissal at that stage because the relevant plan documents had not been attached to the complaint, though they were referenced therein. *Id.* at 13. The Court invited ALC to file those documents and to move once again for dismissal or summary judgment. *Id.* If the plan documents were submitted, the only inquiry for the Court would be whether the plan documents provide ERISA benefits based on hours worked or wages earned, or rather, on wages actually paid.

On June 17, 2009, ALC moved once again to dismiss the ERISA claims, attaching to its motion what it represented to be the ERISA plan documents, and asserting that the documents do indeed tie plan benefits only to wages actually paid employees, not simply to hours worked or wages earned. The Court noted that if this was true, then pursuant to

2

the plan, the Plaintiffs would not be entitled to any additional ERISA benefits for unpaid work hours, and, under the Court's previous ruling, ALC would not have breached any fiduciary duty by failing to keep records or credit the Plaintiffs' accounts for those hours; ALC's motion to dismiss the ERISA claims would have been granted.

The Court, however, did not make a final ruling because Plaintiffs objected that the purported plan documents were not actually the governing ones or that there may exist additional plan documents. The Court found that while the factual controversy existed, it could not rule on the motion to dismiss. Instead, the Court created an accelerated discovery cut-off date for discovery related solely to the identity and contents of the governing documents. The Court established an October 2, 2009 deadline for the parties to stipulate to the authenticity, identity, and contents of the plan documents and submit them on the record. Once they did so, the Court could determine the validity of the ERISA claims as part of ALC's motion to dismiss, or if the parties could not agree on authenticity, as a motion for summary judgment.

On October 2, 2009, the parties submitted plan documents and stipulated as to authenticity. The filing included: 1) Summary Plan Description and Plan Documents for the 401(k) retirement benefit plan offered employees of ALC-Partner, Inc. from March 1, 2004 through December 31, 2007 (docket no. 97, Exs. A & B); 2) Summary Plan Description and Plan Documents for the 401(k) retirement benefit plan offered employees of American Laser Centers, LLC, formerly known as ALC Acquisition Company, LLC, since January 1, 2008 (docket no. 97, Exs. C, D); 3) Adoption Agreement for Automatic Data Processing Non-Standardized 401(k) Plan, which amends, as of November 1, 2008, Plan Documents for the ERISA 401(k) retirement benefit plan available to employees of American Laser Centers, LLC formerly known as ALC Acquisition Company, LLC (docket no. 97, Ex. E).

3

With respect to each document submitted, Plaintiffs admit that, based on the Fed. R. Civ. P. 30(b)(6) deposition testimony, Plaintiffs had no basis to dispute the representation that the documents are true and correct copies.

## ANALYSIS

### I. Legal Standard -- Motion for Dismissal Under Rule 12(b)(6)

"[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (citations omitted). Accordingly, Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. *See Minger v. Green*, 239 F.3d 793, 797 (6th Cir. 2001) (citations omitted).

In assessing a motion brought pursuant to Rule 12(b)(6), the Court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008). To determine whether the plaintiff has stated a claim, a court must consider only the complaint and any written instruments that are attached as exhibits to the pleading. Fed. R. Civ. P. 12(b)(6) & 10(c). Although the pleading standard is liberal, bare assertions of legal conclusions will not enable a complaint to survive a motion pursuant to Rule 12(b)(6). *In re DeLorean Motor Co.*, 991 F. 2d 1236, 1240 (6th Cir. 1993). The Court will not presume the truthfulness of any legal conclusion, opinion, or deduction, even if it is couched as a factual allegation. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a). This standard requires the claimant only to put forth "enough facts to raise a reasonable expectation that discovery will reveal evidence of [the requisite elements of the claim]." *Bell Atl. Corp.*, 550 U.S. at 556. Thus, although "a complaint need not contain 'detailed' factual allegations, its '[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 555). Therefore, the Court will grant a motion to dismiss pursuant to Rule 12(b)(6) only in cases where there are simply not "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*, 550 U.S. at 570.

In ruling on a motion to dismiss, documents that a defendant attaches to the motion are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to its claim. *Weiner v. Klais and Co.*, 108 F.3d 86, 89 (6th Cir. 1997). A plaintiff's reference in a complaint to an ERISA "plan" is sufficient reference to the plan documents such that the plan documents, if attached in the defendant's motion to dismiss, may be considered by the Court in ruling on the motion to dismiss. *See, e.g., id.*

## II.   Discussion

The only issue now before the Court in this motion is whether the ALC plan documents tie ERISA benefits to wages earned, or rather to wages actually paid employees. ALC submits that the ERISA plan documents clearly demonstrate that each of its 401(k) plans "peg[s] benefits to the amounts actually paid to employees," for the

5

reason that the plans are qualified retirement plans whereby an employee elects to defer his compensation by a specific percentage and have that amount contributed to the benefit plan on a pre-tax basis as a deferral of taxable income. "Compensation" is defined in terms of wages actually paid an employee participant. Therefore benefits are tied to wages actually paid. ALC's Mot. to Dismiss, docket no. 75, p. 20. The Court agrees and will dismiss the two ERISA claims.

    A.  <u>Plan Benefits: Employee Deferrals and Employer Matching</u>

Like most 401(k) plans, ALC's 401(k) plan provides two principal plan benefits to employees, both defined in terms of "Compensation:" employee elective deferrals and employer matching. The ALC-Partner 401(k) plan document provides, for example, at section 4.1:

> For each Plan Year, the employer shall contribute to the Plan, except as otherwise provided:
>
> (a) The amount of the total salary reduction elections of all Participants made pursuant to Section 4.2(a), which amount shall be deemed an Employer Elective Contribution.
>
> (b) On behalf of each Participant who is eligible to share in the contribution below, such contribution, which amount shall be deemed an Employer Elective Contribution.
>
>> For Plan Years beginning on and after January 1, 2004, a matching contribution equal to the sum of 100% of the Participant's Deferred Compensation that is not in excess of 3% of the Participant's Compensation ....

ALC-Partner Plan Document, Docket no. 97, Ex. B, sec. 4.1, pp. 20-21. Section 4.2(a), referenced in the quotation above in relation to salary reduction elections, provides:

> Each Participant may elect to defer a portion of *Compensation* which would have been received in the Plan Year (except for the deferral election) by up to the maximum amount ....

6

> The amount by which *Compensation* is reduced shall be that Participant's Deferred Compensation and be treated as an Employer Elective Contribution and allocated to that Participant's Elective Account.

*Id.*, sec. 4.2(a), pp. 22-23 (emphases supplied).

The plan document for the American Laser Centers, LLC 401(k) plan has analogous provisions. The plan document states, at section 12.1(a):

> For each Plan Year, the Employer will ... contribute to the Plan:
>
> > (1) The amount of the total salary reduction elections of all Participants made pursuant to Section 12.2(a), which amount shall be deemed Elective Deferrals, plus
>
> > (2) If elected in the Adoption Agreement, a matching contribution equal to the percentage, if any, specified in the Adoption Agreement of the Elective Deferrals of each Participant eligible to share in the allocations of the matching contribution ...

American Laser Center, LLC plan document, docket no. 97, Ex. D, sec. 12.1, p. 52. Section 12.2(a), referenced in the quotation above in relation to salary reduction elections, provides:

> Each Participant may elect to defer a portion of *Compensation* which would have been received in the Plan Year, but for the salary reduction election ....
>
> The amount by which *Compensation* and/or cash bonuses are reduced shall be that Participant's Elective Deferrals and shall be treated as an Employer contribution and allocated to that Participant's Elective Deferral Account.

*Id.*, sec. 12.2(a), p. 52 (emphases supplied).

From the foregoing provisions, it is clear that the plan documents define plan benefits (employee elective deferrals and employer matching contributions) in terms of employee "Compensation." The relevant inquiry then becomes the definition of "Compensation" under the plan documents.

7

B. Defining "Compensation"

Since the plan documents define employee benefits by reference to an employee's "Compensation," the definition of "Compensation" is pertinent. If compensation is defined in terms of wages earned, but not paid, plan benefits would be tied to wages simply earned. On the other hand, if compensation is defined in terms of wages actually paid, plan benefits would also be tied to wages paid and not simply earned. Upon review, the Court reads the plan documents as defining Compensation in terms of wages paid, so that plan benefits too are tied to wages actually paid. The result is that under the Court's prior orders interpreting the ERISA statutory scheme, Plaintiffs have not stated a claim for ERISA violations and the ERISA claims will be dismissed.

Compensation is clearly defined in the plan documents as wages paid. The summary plan description for the ALC-Partner 401(k) plan provides that for plan purposes, "eligible earnings is defined as compensation as reflected on your Form W-2 ...." Docket no. 97, Ex. A, p. 2. A Form W-2 includes "Wages, tips, and other compensation" an employee is actually *paid* (and which the employer must report). The ALC-Partner 401(k) plan documents themselves define "Compensation," as "[a] Participant's *wages* as defined in [Internal Revenue] Code [of 1986 ("IRC")] Section 3401(a) and all other payments of compensation by the Employer ...." Docket no. 97, Ex. B, sec. 1.8, p.1 (emphasis supplied). "Wages" are defined in IRC § 3401(a) as "... all remuneration ... for services performed by an employee for his employer, including the cash value of all remuneration ... paid in any medium other than cash." 26 U.S.C. § 3401(a). "Remuneration," not defined in the Internal Revenue Code, is defined in the dictionary in terms of the word, "remunerate," which means "*to pay* an equivalent (to a person) for a service, loss, or expense." Webster's Third New International Dictionary (2002) (emphasis supplied). From the foregoing, it is clear that only

8

the value of services by an employee actually *paid* the employee is considered "compensation," a portion of which may be deferred into the plan and considered a plan benefit.

The plan documents for the American Later Centers, LLC similarly define the term "Compensation." The summary plan description states "[c]ompensation is generally defined as your total compensation that is subject to income tax and *paid to you* by your Employer during the plan year." Docket no. 97, Ex. C, p. 9 (emphasis supplied). The plan document itself states:

> 1.11    Compensation with respect to any participant means one of the following as elected in the Adoption Agreement:
>
> (a)  Information required to be reported under Code Sections 6041, 6051, 6052 (Wages, tips and other compensation as reported on Form W-2). Compensation means wages, within the meaning of Code Section 3401(a), and all other payments of compensation to an Employee by the Employer ... for which the Employer is required to furnish the Employee a written statement under Code Sections 6041(d), 6051(a)(3) and 6052.
>
> (b)    Code Section 3401(a) Wages. Compensation means the Employee's wages within the meaning of Code Section 3401(a) for the purposes of income tax withholding ....
>
> (c)    415 Safe-Harbor Compensation. Compensation means wages, salaries, and fees for professional services and other amount received (without regard to whether or not an amount is paid in cash) for personal services actually rendered in the course of employment ....

Docket no. 97. Ex. D, sec. 1.11, p.1. The Adoption Agreement amending the American Laser Centers, LLC plan as of November 1, 2008 indicates that ALC elected to use as "Compensation," "Wages, tips and other compensation on Form W-2." *Id.*, Ex. E, sec. 25. This election incorporates the definition of compensation in 29 U.S.C. § 3401(a), defining it in terms of "remuneration," as discussed above.

9

Although the parties have not submitted an Adoption Agreement specific to American Laser Centers, LLC for the period of January 1, 2008 to November 1, 2008, the Court notes that under any of the three possible elections for compensation as defined in the generic governing document, "Compensation" is defined in terms of "wages" or "remuneration," which as discussed above, are relevant to wages actually *paid* an employee. *See id.*, Ex. D, sec. 1.11, p. 1. Therefore, the absence of an Adoption Agreement specific to the period of January 1, 2008 to November 1, 2008 does not require additional discovery and pretermit the Court's power to rule on ALC's motion to dismiss.

It is clear from the foregoing analysis that the plan documents for the various ALC 401(k) plans tie benefits to "Compensation," and that "Compensation" is tied to wages actually paid an employee. This means that the allegations of ALC's failure to maintain records of actual hours worked by employees, or to credit the actual number of hours worked towards the 401(k) plan do not state a claim for breach of fiduciary duty because ALC was not acting as an ERISA "fiduciary" in this respect -- its decision not to credit employees for hours actually worked was based solely on its decision not to pay its employees for all hours actually worked, which was a business decision, and *not* an ERISA fiduciary decision. The decision did not subject ALC to ERISA fiduciary liability.

Despite these clear passages in the plan documents, Plaintiffs disagree with language in the documents that purportedly demonstrates the necessity of further discovery. Plaintiffs claim that language in the plan summaries is insufficient to demonstrate the actual terms of the plan because the summaries expressly state that in the event of differences between the summary and plan documents, the plan documents govern. While the plan summary for the ALC-Partner 401(k) plan does include the proviso, the Court has not found any differences between the summary and the plan documents on the issue of plan benefits that

10

would trigger application of the proviso. The Court considers the plan summaries for what they are -- summaries of the plan which assist in understanding the plan documents. Even were differences between the two to arise, the plan documents themselves expressly provide that benefits are tied to compensation, which is defined in terms of wages paid.

Plaintiffs also assert that the plans are internally inconsistent and can be read to require the fiduciary managers to maintain records of hours worked by employees, rather than determining benefits based solely on wages paid. Specifically, Plaintiffs note that ALC-Partner 401(k) plan states at sec. 1.29 that "'Hour of Service' means (1) each hour for which an employee is directly or indirectly compensated or *entitled to compensation* by the Employer for the performance of duties." Docket no. 97. Ex. B, sec. 1.29, p. 7 (emphasis supplied). Identical language is found in the American Laser Centers, LLC plan document. Docket no. 97, Ex. D, Sec. 1.33, p. 6. Plaintiffs claim these provisions clearly require the plan fiduciary to involve itself in the question of an employee's entitlement to compensation which is not simply a business function, but a fiduciary function, giving rise to an ERISA claim.

The Court does not find these provisions in the plan documents preclude or contradict its conclusion that plan benefits are tied to compensation, which is tied to wages actually paid. The relevant inquiry is the meaning of the word "Compensation" because plan benefits are tied to "Compensation," however defined. The resounding thrust of the plan documents, as demonstrated above, is that "Compensation" means the amount actually paid an employee for services rendered, not the amount the employee is entitled to for hours actually worked. "Hours of Service," whatever its meaning, is not relevant to the question of whether ERISA benefits are tied to wages earned or wages paid.

11

In the final analysis, after having reviewed the plan documents, the authenticity and completeness of which the parties have agreed to, the Court finds that the ALC 401(k) plan documents clearly tie plan benefits to "Compensation," which is defined in the plan documents as the amount of wages an employee is actually paid. Because plan benefits are pegged solely to wages actually paid, the ALC plan fiduciary had no duty to maintain records of all hours actually worked, or credit the employees' retirement accounts by all hours actually worked. ALC's failure to do so, therefore, cannot give rise to a breach of fiduciary duty. Accordingly, Plaintiffs' ERISA claims fail to state a claim for which relief can be granted and will be dismissed with prejudice.

**WHEREFORE**, it is hereby **ORDERED** that ALC's motion to dismiss Plaintiffs' First Amended Complaint (docket no. 75) is **GRANTED in part**, with respect to the ERISA claims; Plaintiffs' First Claim for Relief: Failure to Maintain Records under ERISA, and Second Claim for Relief: Failure to Credit Eligible Compensation under ERISA, are **DISMISSED with prejudice**.

**SO ORDERED.**

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III
United States District Judge

Dated: November 16, 2009

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on November 16, 2009, by electronic and/or ordinary mail.

s/Alissa Greer
Case Manager